UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH FOLEY, individually
and on behalf of a class of others similarly
situated,

                                                          Case No.  06-CV-0049 ELF

                                    Plaintiff,

        v.

CITY OF BUFFALO,

                                    Defendant.

---

# THE CITY OF BUFFALO'S BRIEF
# IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

**HODGSON RUSS** LLP
*Attorneys for City of Buffalo*

Adam W. Perry,
Jeffrey F. Swiatek, and
Joshua Feinstein of Counsel
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391
Tel:  (716) 856-4000
josh_feinstein@hodgsonruss.com

**TABLE OF CONTENTS**

                                                                                                    PAGE

OVERVIEW                                                                                             1

ARGUMENT                                                                                             3

POINT I.        THE CITY HAS FULLY COMPLIED WITH THE FLSA AND THE
                FIRST ELEVEN CAUSES OF ACTION SHOULD BE DISMISSED .................3

        A.      The City Is Exempt From The FLSA's Seven-Day, Forty-Hour Work
                Week Rule.....................................................................................................4

        B.      The First Five Causes Of Action Should Be Dismissed Because The
                Plaintiff And The Putative Plaintiffs Are Not Entitled To Overtime Under
                The Facts Alleged. .......................................................................................7

        C.      The Sixth Through Eleventh Causes Of Action Seek Compensation For
                Gap Time That Is Not Recoverable Under The FLSA. ...........................9

        D.      The Sixth, Tenth, And Eleventh Causes Of Action Additionally Fail
                Because The City's Rounding Practice Fully Complies With The FLSA.............12

        E.      The Seventh And Ninth Causes Of Action Do Not Allege Time "Worked"
                Under The FLSA And Are Not Compensable.......................................................14

                1.      Sick Or Injured Leave Is Not Considered "Work" Under The
                        FLSA...................................................................................................14

                2.      Any Time The Plaintiff And The Putative Plaintiffs Spent
                        Obtaining Doctor's Notes Or Medical Examinations Is
                        De Minimus And Excluded From FLSA Coverage...................................15

POINT II.       THE STATE LAW CAUSES OF ACTION (TWELVE AND
                THIRTEEN) FAIL ON BOTH SUBSTANTIVE AND PROCEDURAL
                GROUNDS .........................................................................................................17

        A.      The Alleged Work Schedule Complies With State Law. ......................17

        B.      The CBA Overrides Unconsolidated Law § 1015. ................................19

        C.      The Thirteenth Cause Of Action Fails Because It Is Derivative Of The
                Other Causes Of Action. .......................................................................21

        D.      The Putative Plaintiffs Failed To File A Notice Of Claim As Required
                Under Municipal Law §§ 50-e And 50-i.................................................22

        E.      The State Law Claims Are Not Properly Brought As A Collective Action. .........23

        F.      There Is No Independent Basis For Jurisdiction Over The State Law
                Claims. .................................................................................................25

CONCLUSION.................................................................................................................25

## Table of Authorities

**PAGE**

**Federal Cases**

*Adair. v. City of Kirkland,* 185 F.3d 1055 (9th Cir. 1999)................................. 5, 6, 9, 10

*Aiken v. City of Memphis, Tennessee,* 190 F.3d 753 (6th Cir. 1999)........................... 15

*Alex v. City of Chicago,* 29 F.3d 1235 (7th Cir. 1994) ...................................... 4

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1944).................................. 16

*Bagrowsk v. Maryland Port Auth*., 845 F. Supp. 1116 (D. Md. 1994*)*........................ 13

*Barefield v. Village of Winnetka,* 81 F.3d 704 (7th Cir. 1996)................................ 5, 6, 9

*Birdwell v. City of Gadsden, Alabama,* 970 F.2d 802 (11th Cir. 1992) ........................ 5

*Braddock v. Madison County,* 34 F. Supp. 2d 1098 (S.D. Ind. 1998)......................... 10

*Brown v. United States Postal Serv*., 1996 U.S. Dist. LEXIS 19753
      (S.D.N.Y. Oct. 28,1996)................................................................ …10

*Caci v. Wiz of Lake Grove, Inc.,* 267 F. Supp. 2d 297 (E.D.N.Y. 2003)....................... 11

*Capasso v. Metro. Transp. Auth. of New York State,*
      198 F. Supp. 2d 452 (S.D.N.Y. 2002).................................................. 14, 15

*Davis v. City of Loganville, Georgia,* 2006 U.S. Dist. LEXIS 20795
      (M.D. Ga. Mar. 28, 2006)…………………..................................... ………....9, 10

*Debraska v. City of Milwaukee,* 189 F.3d 650 (7th Cir. 1999).................................... 15

*Dornberger v. Metro. Life Ins. Co.,* 182 F.R.D. 72 (S.D.N.Y. 1998).......................... 24

*East v. Bullock's Inc.,* 34 F. Supp. 2d 1176 (D. Ariz. 1998)...................................... 13

*Feaser v. City of New York*, 1995 U.S. Dist. LEXIS 7871 (S.D.N.Y. June 9, 1995)…… ……….5

*Foster v. Food Emporium*, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000)…………....24

*Freeman v. City of Mobile, Ala.,* 146 F.3d 1292 (11th Cir. 1998)........................... 5, 6, 9

*Gotay-Figueroa v. Municipality of San Juan,*
      1997 U.S. App. LEXIS 28639 (1st Cir. Oct. 14, 1997)…....... ………………………….8, 25

**Table of Authorities**

PAGE

*Grochowski v. Ajet Contr. Corp.,* 2000 U.S. Dist. LEXIS 11632
   (S.D.N.Y. Aug. 16, 2000)… .................................................................. ...10

*Hill v. United States,* 751 F.2d 810 (6th Cir. 1984) .................................... 16

*Javier H. v. Garcia-Botello,* 2007 U.S. Dist. LEXIS 10029
   (W.D.N.Y. Feb. 13, 2007)… ............................................................ …......24

*Lamon v. City of Shawnee, Kansas,* 972 F.2d 1145 (10th Cir. 1992).......................................... 4, 6

*Legrand* v. *Educ. Mgmt. Corp.,* 2004 U.S. Dist. LEXIS 17696
   (S.D.N.Y. Sept. 1, 2004).........................................................……….24

*Lindow v. United States,* 738 F. 2d 1057 (9th Cir. 1984)………......……………………….......16

*McGrath* v. *City of Philadelphia,* 864 F. Supp. 466 (E.D. Pa. 1994)……………………………….5

*Milner v. City of Hazelwood,* 165 F.3d 1222 (8th Cir. 1999) ....................................... 10

*Monahan v. County of Chesterfield, Virginia,* 95 F.3d 1263 (4th Cir. 1996).................... 9, 10, 11

*Monserrate v. City of New York,* 2000 U.S. Dist. LEXIS 17013
   (S.D.N.Y. Nov. 27, 2000)… ........................................................... ....15

*Reich v. New York City Transit Auth.,* 45 F.3d 646 (2d Cir. 1995) ............................... 16

*Ruffino v. N. Slope Borough,* 1994 U.S. App. LEXIS 13179 (9th Cir. 1994)………. ……….…......8

*Salamon v. Our Lady of Victory Hosp.,*
   2006 U.S. Dist. LEXIS 14034 (W.D.N.Y. Mar. 8, 2006)…… ...........…………………………….25

*Tennessee Coal, Iron & R.R. Co v. Muscoda Local No. 123,* 321 U.S. 590 (1944)..................... 14

*Watkins v. City of Buffalo,* 1999 U.S. Dist. LEXIS 18241 (W.D.N.Y. Nov. 12, 1999)………....23

*Wethington v. City of Montgomery,* 935 F.2d 222 (11th Cir. 1991) ............................... 4

**State Cases**

*Am. Broad. Co., Inc. v. Roberts,* 61 N.Y.2d 244 (N.Y. 1984) ....................................... 20

*Baldine v. Golmulka,* 61 A.D.2d 419, 402 N.Y.S.2d 460 (3d Dep't 1978)................................. 18

*Capital Newspapers Div. v. Harnett,* 168 A.D.2d 168 (3d Dep't 1991) ........................................ 20

## Table of Authorities

**PAGE**

*Corp v. Alexander,* 92 A.D.2d 430, 460 N.Y.S.2d 674 (4th Dep't 1983) ..................................... 18

*Jones v. Bd of Educ. of the Watertown City Sch. Dist.,*
  800 N.Y.S.2d 248 (Sup. Ct. Jefferson Co. 2005) ................................................. 23

*Kalis v. City of Buffalo,* 306 A.D.2d 932, 762 N.Y.S.2d 195 (4th Dep't 2003) ........................... 23

*Koonz v. Corrigan,* 117 A.D.2d 912 (3d Dep't 1986) ................................................. 20

*Meila v. City of Buffalo,* 306 A.D.2d 935, 762 N.Y.S.2d 197 (4th Dep't 2003) .......................... 23

*Mutuel Ticket Agents, Local 23293 v. Roosevelt Raceway Assocs.,*
  172 A.D.2d 595, 568 N.Y.S.2d 420 (2d Dep't 1991) ................................................ 23

*Noerger v. Bd of Educ. of the Great Neck Union Free Sch. Dist.,*
  98 A.D.2d 274, 471 N.Y.S.2d 139 (2d Dep't 1983) ................................................ 23

*Phelps Steel, Inc. v. City of Glenn Falls,* 89 A.D.2d 652,
  453 N.Y.S.2d 118 (3d Dep't 1982) ................................................................ 23

*Spring Valley PBA v. Village of Spring Valley,*
  80 A.D.2d 910, 437 N.Y.S.2d 400 (2d Dep't 1981) ............................................... 20

*Stanford Heights Fire Dist. v. Town of Niskayuna,* 120 A.D.2d 878,
  502 N.Y.S.2d 548 (3d Dep't 1986) ................................................................ 23

**Federal Statutes**
29 U.S.C. § 201 *et seq.*........................................................................... 1

29 U.S.C. § 207(k) ............................................................................... 5

29 U.S.C. § 207(o)(1) ............................................................................ 8

29 U.S.C. § 254(a) .............................................................................. 14

29 U.S.C. § 216(b) ............................................................................. 24

**State Statutes**
CPLR § 901(b)................................................................................... 24

N.Y. Unconsol. Law § 1015 ................................................................... 2, 17

N.Y. Unconsol. Law Chapter 360, §1……………………………………………………20

## Table of Authorities

**PAGE**

N.Y. Unconsol. Law § 971……………………………………………………………....20

**Federal Rules**
Fed. R. Civ. P. 12(c) ........................................................................................ 3

**Federal Regulations**
29 C.F.R. § 553.221 ........................................................................................ 14

29 C.F.R. § 553.224(a)..................................................................................... 5

29 C.F.R. § 553.230 ........................................................................................ 4

29 C.F.R. § 553.231 ........................................................................................ 8

29 C.F.R. § 785.48(b) ...................................................................................... 13

29 C.F.R. § 553.201 ........................................................................................ 4

**Other Authorities**
1957 N.Y. Op. Att'y Gen. 305 (Nov. 8, 1957 ............................................. 18

1992 N.Y. Op. Att'y Gen. I 92-21 (Mar. 11, 1992)……………………………………….... ....20

## OVERVIEW

The City of Buffalo submits this brief in support of its motion to dismiss the Complaint. Named plaintiff Joseph Foley is the President of the Buffalo Professional Firefighters Association, IAFF, AFL-CIO, Local 282 (the "Union"). He alleges thirteen causes of action -- eleven under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.*, and two under New York State law -- on behalf of himself and allegedly similarly situated firefighters.

The Complaint misapprehends the law. The plaintiff repeatedly alleges that the City is subject to the FLSA Section 7(a), which requires the payment of overtime for any work exceeding forty hours during a seven-day week. FLSA Section 7(k), however, permits firefighters like the putative plaintiffs to work up to sixty-one hours in an eight-day work period without receiving overtime. Therefore, the first five causes of action -- which all reduce to the claim that the putative plaintiffs are entitled to overtime compensation under the FLSA for working an eight-day, forty-eight-hour work period -- are without merit.

The remaining FLSA claims also fail because, *inter alia*, they seek damages for "gap time," that does not violate the FLSA's minimum wage or overtime requirements. The plaintiff alleges that the City does not compensate the putative plaintiffs for work beyond their regular shifts lasting less than fifteen minutes, for attending required professional training, and for time spent obtaining doctors' notes. The plaintiff also alleges that overtime pay is due because the putative plaintiffs are restricted while on sick or injured leave. But the Complaint does not allege that the putative plaintiffs worked more than sixty-one hours during any eight-day work period as the result of these practices, and thus no overtime could have become due

- 1 -

under the FLSA.  Nor is it alleged that the putative plaintiffs received less than minimum wage

for all their non-overtime hours -- another missing requirement for a viable pleading under the

FLSA.  The Fifth through Eleventh Causes of Action therefore do not state a claim under the

FLSA.

        The plaintiff further claims that the City violates New York Unconsolidated Law

§ 1015, which generally prohibits firefighters from working more than an ***average*** of forty hours

a week over a year.  But, as the complaint also alleges, firefighters receive one hour of

compensatory time for each hour worked beyond forty as part of their regularly scheduled shifts,

thereby bringing their average number of hours of work per week under forty as required by the

statute.  The City implemented this system for the specific purpose of ensuring compliance with

Unconsolidated Law § 1015.  Accordingly, the state law claims are also meritless.

        The City's decades-old system for awarding compensatory time is also protected

under the Collective Bargaining Agreement (the "CBA") because it results in substantial benefits

for firefighters, including four days off for every four days worked and two, eight-day work

periods of free time in addition to normal vacations.[1]  The Union has never before challenged the

eight-day work schedule or the City's system for awarding firefighters compensatory time.  Even

now, the plaintiff is not seeking to abolish the schedule; he is just seeking monetary relief.  As

the putative plaintiffs' exclusive negotiating agent, the Union has therefore waived any claims

---

[1]      CBA Article III, § 3.2 is attached as Exhibit A and CBA Article XXVII is attached as
Exhibit B to the Declaration of Fire Commissioner Michael Lombardo dated July 31,
2007 ("Lombardo Decl.").  CBA Article III is attached as Exhibit A and CBA Article IX
is attached as Exhibit B to the Affidavit of Joshua Feinstein dated August 2, 2007.

based on the alleged deprivation of this state statutory benefit through the collective bargaining process.

Lastly, the state law claims are procedurally defective because, *inter alia*, they are not properly brought as part of a collective action and the putative plaintiffs never filed a notice of claim as required by law.

The Court should dismiss the plaintiff's first eleven causes of action pursuant to Rule 12(c) of the Federal Rules of Civil Procedure because the Complaint does not state a valid FLSA claim.  The Court should likewise dismiss the remaining state law causes of action with prejudice or, at a minimum, decline supplemental jurisdiction.

**<u>ARGUMENT</u>**

**POINT I.     THE CITY HAS FULLY COMPLIED WITH THE FLSA AND THE FIRST ELEVEN CAUSES OF ACTION SHOULD BE DISMISSED**

Even when viewed in the light most favorable to the plaintiff, the Complaint does not allege that the putative plaintiffs worked sufficient hours to qualify for overtime compensation under the FLSA.  On the contrary, it is indisputable that the City complies with the FLSA because: (1) firefighters are not entitled to overtime pay until they have worked sixty-one hours in an eight-day work period (they would have to work thirteen hours a week more than the eight-day, forty-eight hour schedule alleged in the Complaint); (2) the FLSA governs minimum and overtime wage claims and does not apply to "gap time" claims arising from alleged obligations separate from these statutory requirements; and (3) compensation is only required for hours "worked" as defined by the FLSA and the plaintiff seeks compensation for non-work activities such as obtaining doctors' notes.

- 3 -

**A.      The City Is Exempt From The FLSA's Seven-Day, Forty-Hour Work Week Rule.**

The plaintiff's FLSA claims are grounded in the false contention that working in excess of forty hours a week entitles the putative plaintiffs to overtime compensation.[2]  As a municipal employer of firefighters, however, the City is expressly exempted from the general "forty-hour work week" rule found in FLSA Section 7(a).  Under FLSA Section 7(k), firefighters may work up to 212 hours in a twenty-eight-day work period before being eligible for overtime.  This number is prorated for any work period greater than seven but less than twenty-eight days.[3]  Under U.S. Department of Labor regulations, overtime compensation is not required until a firefighter has worked sixty-one hours during an eight-day work period.[4]  The plaintiff claims that the putative plaintiffs are required to work forty-eight hours per eight-day work period.  As a matter of law, this is thirteen hours less than the FLSA requires for firefighters like the putative plaintiffs to be entitled to overtime compensation.  Accordingly, no overtime is due.

---

[2]      *See, e.g.,* Compl. ¶¶ 16-18, 20, 23-26, 31-34, 36-37, 45-47, 67, 69, 75-76, 85, 94-95, 99, 105-106, 110, 117-188, 122, 129-130, 133-134.

[3]      29 C.F.R. §§ 553.201, 553.230; *see also Alex v. City of Chicago*, 29 F.3d 1235, 1238 (7th Cir. 1994) (holding that Section 7(k) creates "a partial exemption for public agency employers of law enforcement and fire protection personnel by upping the threshold at which overtime compensation entitlement begins"); *Lamon v. City of Shawnee, Kansas*, 972 F.2d 1145, 1150 (10th Cir. 1992) ("Congress recognized that certain jobs are not easily susceptible to the work week method of wage and time calculations, and therefore provided special calculation methods for some trades, including fire protection and law enforcement" quoting *Wethington v. City of Montgomery*, 935 F.2d 222, 223 (11th Cir. 1991)).

[4]      29 C.F.R. § 553.230.

There is no requirement that a municipality must "elect" the 7(k) exemption.[5]  For Section 7(k) to apply, "the employer must show that it established a 7(k) work period and that the 7(k) work period was 'regularly occurring.'"[6]  "Work period," as used in section 7(k), is a "regularly recurring period of work which . . . cannot be less than seven consecutive days nor more than twenty-eight consecutive days . . . and it need not coincide with the duty cycle or pay period."[7]

The plaintiff mistakenly asserts that an FLSA "workweek consists of a fixed, regularly reoccurring seven (7) day period" and he is entitled to overtime compensation for any hours worked in excess of eighty hours during his fourteen-day pay period.[8]  These legal contentions are without merit and have no bearing on whether the City qualifies for a 7(k) exemption.  The City need not "structure pay periods to be co-extensive with the chosen work

---

[5]     *Feaser v. City of New York*, 1995 U.S. Dist. LEXIS 7871, at *2, 14 (S.D.N.Y. June 9, 1995) (holding that "[29 U.S.C.] § 207(k) is the standard by which overtime for [fire protection and] law enforcement employees is calculated "even though it was undisputed" that [the city had] not 'established' a § 207(k) work week for these plaintiffs or paid them overtime accordingly"); *see also Freeman v. City of Mobile, Ala.*, 146 F.3d 1292, 1297 (11th Cir. 1998) (holding that "the City is entitled to a 7(k) exemption" without a need for a showing that the city has "'affirmatively adopted' a 7(k) plan"); *Barefield v. Village of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996) ("[N]othing in the language of the statute, 29 U.S.C. § 207(k), requires [the city] to express a 'declaration of intent' to qualify for the exemption.  We hold that it is enough that [the city's] police department met all of the factual criteria for § 7(k)").

[6]     *Adair. v. City of Kirkland*, 185 F.3d 1055, 1061 (9th Cir. 1999) (quoting *McGrath v. City of Philadelphia*, 864 F. Supp. 466, 474 (E.D. Pa. 1994)).

[7]     29 C.F.R. § 553.224(a); *see also Birdwell v. City of Gadsden, Alabama*, 970 F.2d 802, 806 (11th Cir. 1992) ("[A] work period is not the same idea as a work week or pay period").

[8]     Compl. ¶¶ 17, 21.

period"[9] or "express a 'declaration of intent' to qualify for the exemption."[10]  As courts have uniformly held, a municipality need only adopt a work period that is consistent with Section 7(k) for the exemption to apply.[11]   For example, in *Adair*, the Ninth Circuit held that the city's eight-day work week was a "'regularly recurring' work period [which] shows that the [c]ity established a 7(k) exemption."[12]  Similarly, the Seventh Circuit held in *Barefield* that the twenty-eight-day work period "is enough [for] a schedule [to] meet[] all of the factual criteria for § 7(k) [to] qualif[y] for the 7(k) exemption regardless of whether the employees approve."[13]  The Tenth Circuit also held in *Lamon* that, even when the city paid its law enforcement personnel every two weeks and paid overtime for hours worked in excess of forty per week, it still qualified for the 7(k) exemption because the city had "adopt[ed] a specified work period."[14]  Here, the Complaint alleges an eight-day, regularly recurring work period; thus, regardless of the pay periods, the City qualifies for the 7(k) exemption.

---

[9]     *Lamon*, 972 F.2d at 1151-1152.

[10]    *Barefield*, 81 F.3d at 710.

[11]    *See, e.g., Freeman*, 146 F.3d at 1297 ("Thus, if a city government adopts a work period of 7 to 28 days for its police force, it may require its officers to work more than 40 hours per week without having to pay overtime").

[12]    185 F.3d at 1061.

[13]    81 F.3d at 710.

[14]    972 F.2d at 1151-1152.

**B.**  **The First Five Causes Of Action Should Be Dismissed Because The Plaintiff And The Putative Plaintiffs Are Not Entitled To Overtime Under The Facts Alleged.**

Although the first five causes of action are largely duplicative and poorly delineated, the plaintiff appears to be asserting that the City violated the FLSA because: (1) the putative plaintiffs received only one hour of compensatory time for every hour worked in excess of forty hours a week (First Cause of Action); (2) the compensatory time given was not agreed upon (Second Cause of Action); (3) the use of the compensatory time had to be in compliance with a set schedule (Third Cause of Action); (4) the compensatory time was eliminated if not used within a calendar year (Fourth Cause of Action); and (5) the City failed to compensate the putative plaintiffs at an overtime rate for hours worked in excess of forty hours a week (Fifth Cause of Action).[15]

These causes of action are all premised on the faulty assumption that the putative plaintiffs are entitled to overtime under the eight-day, forty-eight-hour work period alleged in the Complaint.  FLSA Section 7(k) exempts from overtime the hours worked by a firefighter in excess of forty but less than sixty-one over an eight-day work period.  FLSA regulations further only entitle firefighters to "receive compensatory time off in lieu of overtime pay for hours

---

[15]      Compl. ¶¶ 23-24, 36-37, 48-50, 60-61, 68-69.

worked in excess of the maximum for their work period."[16]  Thus, where no overtime has

accrued, no overtime pay or compensatory time in lieu of overtime is due.[17]

      The plaintiff's claims here are much like those alleged in *Gotay-Figueroa v.*

*Municipality of San Juan*,[18] where police officers claimed that the city violated the FLSA by

failing to pay overtime and give compensatory time in lieu of overtime pay for hours worked in

excess of forty hours per week.  The First Circuit dismissed both claims "for the same reason" --

*i.e.*, that the police officers failed to allege that "they were required to work more than forty-three

hours in a [seven-day] work period without additional compensation."[19]  The plaintiff too does

not allege that he or the putative plaintiffs have worked more than sixty-one hours without

additional compensation.  Accordingly, they are not entitled to overtime or compensatory time in

lieu of overtime.

      Numerous other courts, relying upon Section 7(k), have found the forty-hour

work week rule inapplicable to firefighters and other uniformed municipal employees.  The

Eleventh Circuit in *Freemen* dismissed police officers' claims to overtime compensation for

hours worked in excess of forty per week because the city adopted a fourteen-day work period

allowing it to "require its officers to work more than forty hours per week without having to pay

---

[16]     29 C.F.R. § 553.231.

[17]     *Ruffino v. N. Slope Borough,* 1994 U.S. App. LEXIS 13179, at *12-13 (9th Cir. 1994) ("Only when time off is given in lieu of overtime is a compensatory time system in place."); 29 U.S.C. § 207(o)(1).

[18]     1997 U.S. App. LEXIS 28639 (1st Cir. Oct. 14, 1997).

[19]     *Id.* at *1-2.

overtime."[20]  Likewise, in *Barefield,* the Seventh Circuit found that a forty-hour work week does

not apply to police officers who admittedly work a twenty-eight-day schedule.[21]  Here, the

plaintiff admits to an eight-day, forty-eight-hour work schedule, and does not allege working

over sixty-one hours during any eight-day schedule.  The first five causes of action therefore fail

as a matter of law.

     **C.**     **The Sixth Through Eleventh Causes Of Action Seek Compensation For Gap Time That Is Not Recoverable Under The FLSA.**

     The plaintiff and the putative plaintiffs seek compensation for "working beyond

their scheduled shifts for less than a fifteen (15) minute period" (Sixth Cause of Action), for sick

or injured leave (Seventh Cause of Action), for First Responder and EMT training (Eighth Cause

of Action), for time spent during medical examinations, for obtaining doctor's notes (Ninth

Cause of Action), and for "briefing incoming employees" (Tenth and Eleventh Causes of

Action).[22]  These causes of action seek compensation for what courts have characterized as "gap

time" -- a claim "for uncompensated hours worked that fall between the minimum wage and the

overtime provisions of the FLSA."[23]

     "[T]he two central themes of the FLSA are its minimum wage and overtime

requirements."[24]  The FLSA does not cover the "gap" between the "time that is not covered by

---

[20]     146 F.3d at 1297.

[21]     81 F.3d at 710.

[22]     Compl. ¶¶ 79, 87, 98, 103, 121, 133.

[23]     *Adair*, 185 F.3d at 1062.

[24]     *Monahan v. County of Chesterfield, Virginia*, 95 F.3d 1263, 1266-1267 (4th Cir. 1996) (quotations and citation omitted); *see also Davis v. City of Loganville, Georgia*, 2006

the overtime provisions because it does not exceed the overtime limit and . . . [the] time that is not covered by the minimum wage provisions because, even though the work is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked."[25]  These gap time claims are beyond the FLSA's ambit and concern a subject matter that is either "more appropriate for state court adjudication under state employment and contract law"[26] or for collective bargaining.[27]

Thus, a claim for gap time is only cognizable under the FLSA if the employee received less than the statutory minimum wage for all non-overtime hours.[28]  The Eastern

---

U.S. Dist. LEXIS 20795, at *10 (M.D. Ga. Mar. 28, 2006) ("The FLSA is a minimum wage, maximum hour law; its purpose is to set limits on the minimum wages and maximum hours an employee is permitted to work before the employer is required to pay overtime. . . .  All that the FLSA requires is that an employee be paid at least the statutory minimum wage for all hours worked, and if no exemption applies, overtime pay for each hour in excess of the statutory minimum.").

[25]   *Adair*, 185 F.3d at 1062 n.2; *see also Grochowski v. Ajet Constr. Corp.,* 2000 U.S. Dist. LEXIS 11632, at *9-11 (S.D.N.Y. Aug. 16, 2000) ("The FLSA provides that an employer is liable to an employee for 'unpaid minimum wages or unpaid overtime' . . . [and] recovery . . . is thus limited to unpaid minimum wages and any unpaid overtime . . .").

[26]   *Monahan*, 95 F.3d at 1267.

[27]   *Brown v. United States Postal Serv.*,  1996 U.S. Dist. LEXIS 19753, at *7 (S.D.N.Y. Oct. 28, 1996) ("The FLSA does not provide a remedy regarding what particular wage rate should be paid beyond minimum wage . . . ; these issues are appropriately covered by an employee's employment contract or collective bargaining agreement."); *Braddock v. Madison County*, 34 F. Supp. 2d 1098, 1112 (S.D. Ind. 1998) ("The general 'remedial purpose' of the FLSA does not support its expansion to a mechanism for employees to enforce a broad range of employers' contractual obligations beyond the minimum wage and overtime requirements enacted by Congress.").

[28]   *See, e.g., Monahan*, 95 F.3d at 1273; *Davis*, 2006 U.S. Dist. LEXIS 20795, at *23; *see also Adair,* 185 F.3d at 1062 n.6 ("[E]ven though [gap time] is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked."); *Milner v. City of Hazelwood*, 165 F.3d 1222, 1223 (8th Cir.

- 10 -

District of New York dismissed a claim under the FLSA because, although the plaintiff may have not been paid for certain hours worked, "he was paid at least the required minimum wage for every hour worked."[29]  Similarly, the Fourth Circuit in *Monahan v. County of Chesterfield* dismissed claims by police officers for straight time back pay under the FLSA.  Specifically, the court upheld the county's 24-day, 135-hour work schedule, even though officers received no additional compensation for working between 135 and 147 hours, the threshold for accruing FLSA overtime under a 24-day schedule.  Since the county had paid "a regular hourly rate well in excess of statutory minimum wage" for all non-overtime hours, the police officers did "not have a claim for an hourly compensation dispute under the FLSA."[30]

Here, the plaintiff does not allege that the practices challenged in the Sixth through Eleventh Causes of Action required the putative plaintiffs to work more than sixty-one hours per eight-day work period, the minimum required under the FLSA for overtime to be due. He also does not allege that the challenged practices result in the putative plaintiffs receiving less than the statutory minimum wage for all non-overtime hours.  Accordingly, the Sixth through Eleventh Causes of Action concern "gap time" beyond the FLSA's ambit and should be dismissed.

---

1999) (holding that plaintiffs' claim that "the FLSA entitles [plaintiffs] to compensation at their *regular* rates whenever unpaid time attending mandatory roll calls increased their total hours in a twenty-eight-day work period to more than 160 hours but less than 171 maximum hours permitted in the § 207(k) regulations . . . is without merit").

[29]    *Caci v. Wiz of Lake Grove, Inc.,* 267 F. Supp. 2d 297, 300 (E.D.N.Y. 2003).

[30]    *Monahan*, 95 F.3d at 1267, 1276-1277.

**D.**      **The Sixth, Tenth, And Eleventh Causes Of Action Additionally Fail Because The City's Rounding Practice Fully Complies With The FLSA.**

The plaintiff claims that the putative plaintiffs are not compensated for working less than fifteen minutes beyond their scheduled shifts (Sixth Cause of Action), but he conveniently omits that firefighters are compensated for one hour of work if they stay fifteen minutes beyond their scheduled shifts.[31]  The plaintiff also alleges that the City does not compensate its firefighters for "briefing incoming employees where such time spent is beyond their scheduled shifts" (Tenth Cause of Action) and that this "briefing time" is not compensated at an overtime rate (Eleventh Cause of Action). [32]  These three causes of action should be dismissed because -- in addition to such time amounting to unrecoverable gap time under the FLSA -- the City's time keeping practice fully complies with the FLSA.

As stated in the CBA, the City compensates firefighters for a full hour when a firefighter stays on duty more than fifteen minutes beyond the regular shift, but pays no additional time if a firefighter leaves duty less than fifteen minutes past the end of a shift.  The CBA provides:

> If [a firefighter is] directed to remain on duty more than 15 minutes beyond scheduled relief time, he shall receive a minimum of one (1) hour straight time pay in units of one (1) hour multiples.  If directed to remain on duty less than 15 minutes beyond scheduled relief time, he shall receive no overtime pay.[33]

---

[31]      Lombardo Decl. ¶ 2; Compl. ¶ 79.

[32]      Compl. ¶¶ 121, 133.

[33]      CBA, Art. III, § 3.2(H)(2).  Notably, the plaintiff cites this provision of the CBA in the Complaint at ¶ 68.

This rounding practice is fully consistent with FLSA regulations, which permit an employer to "round" "employees' starting time and stopping time to the nearest . . . quarter of an hour . . . [if it] averages out so that the employees are fully compensated for all the time they actually work."[34]  "The presumption . . . is that this arrangement averages out so that employees are fully compensated for all the time they actually work."[35]

For example, the court in *Bagrowsk v. Maryland Port Authority*[36] upheld a rounding policy that rounded down thirty minutes or less of work, which "was mitigated in practice because it was mirrored by a 'rounding up' policy whereby any officer working at least 31 minutes would be given a full hour's pay."[37]  In *East v. Bullock's Inc.*, the court likewise found that a rounding policy that "involve[d] time differences of less than 15 minutes" did not violate the FLSA.[38]

Here, the City's rounding policy is more generous than those upheld in *Bagrowski* and *East*.  The putative plaintiffs receive up to forty-five minutes rounded up in their favor, while never losing fifteen minutes from time being rounded down. The City's rounding practices therefore comply with the FLSA, so the Sixth, Tenth, and Eleventh Causes of Action should be dismissed for this additional reason as well.

---

[34]   29 C.F.R. § 785.48(b).

[35]   *East v. Bullock's Inc.*, 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998).

[36]   845 F. Supp. 1116 (D. Md. 1994).

[37]   *Id.* at 1121.

[38]   34 F. Supp. at 1184.

E.      **The Seventh And Ninth Causes Of Action Do Not Allege Time "Worked" Under The FLSA And Are Not Compensable.**

In addition to the reasons stated above, the Seventh and Ninth Causes of Action should be dismissed because the alleged uncompensated time does not constitute "work" under the FLSA.

1.      <u>Sick Or Injured Leave Is Not Considered "Work" Under The FLSA.</u>

The Seventh Cause of Action alleges that the City restricted the putative plaintiffs while on sick or injured leave and therefore should include sick or injured leave as part of the time used to calculate overtime compensation.  Restricted sick time is simply not compensable work under the FLSA.[39]

The Supreme Court has defined work as time "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."[40]  The Portal-to-Portal Act, which amends the FLSA, further excludes from compensation activities that are "preliminary or postliminary" to the principal activities the employee is employed to perform.[41]

Consistent with these principles, the Southern District of New York held that a requirement that firefighters must remain at home for the entire day while on sick or injured

---

[39]     29 C.F.R. § 553.221; *see also Capasso v. Metro. Transp. Auth. of New York State*, 198 F. Supp. 2d 452, 459 (S.D.N.Y. 2002) (holding that "time expended at home pursuant to the sick leave policy was not compensable 'work'" under the FLSA).

[40]     *Tennessee Coal, Iron & R.R. Co v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).

[41]     29 U.S.C. § 254(a).

leave does not as a matter of law constitute "work" entitling them to overtime compensation.[42]

Likewise, the court in *Capasso v. Metro Transit Authority* held that requiring a police officer to

remain at home during "sick time is not compensable 'work' under the FLSA" because "[s]ick

and injured officers are not fit to work, are not 'engaged to wait' at home for work, and therefore

are not working."[43]  A restriction does not amount to work simply because it may affect some

personal activities.  The restriction must be so severe that the employee's time is spent

"predominantly for the employer's benefit."[44]  The plaintiff does not allege that such a restriction

has been alleged or been placed on the putative plaintiffs' sick leave.  Therefore, the allegedly

restricted sick leave is not "work" and the Seventh Cause of Action should be dismissed.

       2.      <u>Any Time The Plaintiff And The Putative Plaintiffs Spent Obtaining Doctor's Notes Or Medical Examinations Is *De Minimus* And Excluded From FLSA Coverage.</u>

      The plaintiff's Ninth Cause of Action alleges that he and the putative plaintiffs

had to "undergo medical examinations and obtain doctor's notes outside their regular scheduled

---

[42]    *Monserrate v. City of New York*, 2000 U.S. Dist. LEXIS 17013, at *6-8 (S.D.N.Y. Nov. 27, 2000) (dismissing, before discovery had been completed, police officer's claims to overtime compensation for sick leave and holding that it was "reasonable" for the city to restrict those on sick leave from leaving their homes).

[43]    198 F. Supp. 2d at 459-460 (*quoting Debraska v. City of Milwaukee*, 189 F.3d 650, 651 (7th Cir. 1999)).

[44]    *Aiken v. City of Memphis, Tennessee*, 190 F.3d 753, 760 (6th Cir. 1999) (dismissing officers' claim to overtime for sick leave hours when confined to their residences because, "[a]t home, such officers [we]re free to use their time as they please"); *see also Capasso*, 198 F. Supp. 2d at 460 ("[T]he sick leave policy primarily benefits plaintiff"); *Debraska*, 189 F.3d at 652 ("An officer who claims to be sick or injured . . . and therefore unable to work, may be required to behave in accord with the representation that led the City to grant the leave. . . . [and to] confine the officer to home . . .").

shifts."[45]  This is not a requirement to do something while working a regular shift; rather, it is *de minimis* time spent while on sick, injured, or disability leave.[46]  The Supreme Court has held that *de minimis* "minutes of work beyond the scheduled working hours . . . may be disregarded."[47]  Compensable work is limited to "when an employee is required to give up a substantial measure of his time and effort."[48]  Getting a doctor's note requires no such time or effort.

"[T]hree factors should be examined to assess whether otherwise compensable time should be considered *de minimis*, and therefore not compensable: (1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether 'the claimants performed the work on a regular basis.'"[49]  Here, administering which firefighter got a doctor's note and determining how long that took might well exceed the minimal and infrequent time expended in obtaining the note.[50]  As such, this allegation is *de minimis* as a matter of law and should be dismissed.

---

[45]     Compl. ¶ 103.

[46]     CBA, Art. IX.

[47]     *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1944); *see also Reich v. New York City Transit Auth.*, 45 F.3d 646, 652-653 (2d Cir. 1995) (Some work is so "negligible as to be *de minimis* and therefore not compensable under the FLSA"); *Hill v. United States*, 751 F.2d 810, 815 (6th Cir. 1984) (holding that interruption of postal worker during lunch was *de minimis*, requiring no compensation under the FLSA).

[48]     *Id.*

[49]     *Reich*, 45 F.3d at 652 (citing *Lindow v. United States*, 738 F.2d 1057, 1062-1063 (9th Cir. 1984)).

[50]     *Id.* at 652-653 ("Considering the administrative difficulty of establishing a reliable system for recording the time spent in such care during commutes, the irregularity of the occurrence, and the tiny amount of aggregate time so expended, we conclude that these

**POINT II.     THE STATE LAW CAUSES OF ACTION (TWELVE AND THIRTEEN) FAIL ON BOTH SUBSTANTIVE AND PROCEDURAL GROUNDS**

The plaintiff also asserts New York State law violations, claiming that he and the putative plaintiffs are required to work more than an average of forty hours a week in violation of New York Unconsolidated Law § 1015.[51]  He also seeks contributions to the New York State Employees' Pension Fund based on awards of back pay under the other twelve causes of action.[52]  Again, as with the FLSA claims, the state claims should be dismissed because the Complaint's allegations, even when liberally construed in the putative plaintiffs' favor, fail to support any violation of law.

**A.     The Alleged Work Schedule Complies With State Law.**

The Twelfth Cause of Action alleges liability under New York Unconsolidated Law § 1015 because the putative plaintiffs are purportedly required to work *on average* more than forty hours per week.  But, the plaintiff admits that "for each hour beyond forty (40) hours worked by Plaintiff and other employees similarly situated as part of their regularly scheduled shifts, Defendant provides Plaintiff with one (1) hour of compensatory time."[53]  Thus, based on the Complaint, the putative plaintiffs cannot possibly work *on average* more than forty hours per week when they receive an hour of compensatory time for each hour they work in excess of forty per week as part of their regular shifts.

---

episodes of additional compensable work are de minimis and, therefore, need not be compensated").

[51]     Compl. ¶¶ 138-139.

[52]     *Id.* ¶¶ 145-151.

[53]     *Id.* ¶¶ 18, 33, 47, 59.

Unconsolidated Law § 1015 provides, in relevant part, that "no fireman shall be required to work more than an average of 40 hours per week, computed during the current fiscal year of the City, Town, Village or fire district by which such fireman is employed."  The statute is designed to accommodate the unusual hours demanded by the firefighting profession, while limiting the total hours worked by firefighters.  As the Appellate Division has explained:

> [Unconsolidated Law § 1015] was enacted to bring the hours worked and benefits received by firefighters in line with other public employees . . . . [T]o achieve this desired result it was necessary to make allowances for the unique working hours demanded of firefighters.  Since the various municipalities require around the clock fire protection, the firefighters of necessity worked more than the traditional eight-hour shift at in many cases firefighters worked 24-hour shifts.  Therefore, provisions are made in the series of statutes [culminating in the 1968 enactment of Unconsolidated Law § 1015] to accommodate the longer continuous hours of work by firefighters with mandated maximum hours permitted.  The instant statute restricted the maximum hours a firefighter was 'required to work' to no more than an average of 40 per week during the current fiscal year.  Consequently, on an annual basis, if properly planned, it could be arranged so that at the end of year no firefighter worked more than an average 40 hours per week.[54]

Thus, Unconsolidated Law § 1015 regulates the ***average number*** of hours firefighters are required to work per week, not the maximum.  The number of hours that firefighters may be required to work in any fiscal year is derived by multiplying the average of forty hours per week by the number of weeks worked in a fiscal year.[55]  The statute therefore does not prohibit the

---

[54]     *Corp v. Alexander*, 92 A.D.2d 430, 433, 460 N.Y.S.2d 674, 676-677 (4th Dep't 1983) (internal quotations and emphasis modified); *see also Baldine v. Golmulka*, 61 A.D.2d 419, 402 N.Y.S.2d 460, 461 (3d Dep't 1978).

[55]     1957 N.Y. Op. Att'y Gen. 305 (Nov. 8, 1957) ("[I]f the authorized vacation time is three weeks the maximum hours of work that could be worked in any fiscal year would be [40] hours per week multiplied by 49 weeks . . .").

City from requiring its firefighters to work more than forty hours per week in any given week; the prohibition is on the amount of hours worked *averaged* over the entire year.  The plaintiff does not and cannot assert that he and putative plaintiffs are required to work more than forty hours a week averaged over the course of the fiscal year.  Instead, the Complaint concedes that, to the extent that they are required to work more than forty hours per week, the putative plaintiffs receive one hour of compensatory time as part of their regular schedule.

In addition, the declaration of Fire Commissioner Michael Lombardo makes clear that the Fire Department's compensatory time system is specifically designed to ensure compliance with Unconsolidated Law § 1015, while permitting the City to continue to use an eight-day, forty-eight-hour schedule.[56]  Notably, the Union -- whose current president is the plaintiff -- has never objected to or sought to modify the schedule, which has substantial benefits for its membership, including four days off for every four days worked.[57]  Even now, the plaintiff does not appear to be seeking to modify the schedule; he only wants monetary relief.[58]  Accordingly, the Twelfth Cause of Action should be dismissed because the putative plaintiffs could not have worked more than an average of forty hours a week under their regular schedules and received the compensatory time alleged in the Complaint.

**B.**     **The CBA Overrides Unconsolidated Law § 1015.**

The Twelfth Cause of Action also fails because the Union has waived the statutory benefits provided under Unconsolidated Law § 1015 on behalf of the plaintiff and the

---

[56]     Lombardo Decl. ¶ 4.

[57]     *Id.*

putative plaintiffs.  A union may waive a statutory benefit on behalf of employees through the collective bargaining process, so long as the legislative purpose of such statutory benefits is not undermined.[59]  This is particularly true where, as here, the statute contains no express prohibition against waiver.[60]

The Appellate Division has held that the collective bargaining process may result in waiver of statutory benefits of the type at issue here.  For example, in *Spring Valley PBA v. Village of Spring Valley,*[61] the court rejected the argument that a police collective bargaining agreement providing for overtime violated Unconsolidated Law Chapter 360, § 1.  In the same way Unconsolidated Law § 1015 sets general standards for hours worked by firefighters, Chapter 360, § 1 provides that police patrolmen may be assigned to one tour of duty not to exceed eight hours and to no more than forty hours of duty during any seven-day period.[62]  As the court explained, under the statute, overtime "may not unilaterally be imposed by an employer"; nevertheless, "public employees, through their organizations, may bargain for and agree upon provisions for overtime as part of the collective bargaining process."[63]  Just as police officers

---

[58]     Compl. at "wherefore" clause.

[59]     *Am. Broad. Co., Inc. v. Roberts,* 61 N.Y.2d 244, 246 (N.Y. 1984); *see also Capital Newspapers Div. v. Harnett,* 168 A.D.2d 168, 171 (3d Dep't 1991).

[60]     *Capital Newspapers Div.,* 168 A.D.2d at 172.

[61]     *Spring Valley PBA,* 80 A.D.2d 910, 910-911, 437 N.Y.S.2d 400, 400-401 (2d Dep't 1981).

[62]     *See* N.Y. Unconsol. Law § 971.

[63]     *Spring Valley PBA,* 80 A.D.2d at 911; *see also Koonz v. Corrigan,* 117 A.D.2d 912, 914 (3d Dep't 1986) (holding that "collective bargaining may, and does" override the Unconsolidated Law, Chapter 360); 1992 N.Y. Op. Att'y Gen. I 92-21 (Mar. 11, 1992)

may waive a statutory benefit effecting their work hours, so too can firefighters waive the alleged statutory benefit effecting their work hours.

The challenged work schedule has existed for many decades and falls squarely within the scope of the CBA. [64]  The Union has had ample opportunity to challenge the schedule; however, despite renegotiating numerous other terms and conditions of employment over the decades, the Union has never contested the firefighter's work schedule.  In this way, the Union, as the exclusive negotiating agent for the putative plaintiffs, have waived any statutory benefit that has been allegedly deprived.

### C.    The Thirteenth Cause Of Action Fails Because It Is Derivative Of The Other Causes Of Action.

The Thirteenth Cause of Action seeks contributions to the plaintiff and the putative plaintiffs' pensions under the New York Retirement and Social Security Law. According to the Complaint, the City's "failure to properly compensate Plaintiff and other employees similarly situated, in violation of the FLSA, as stated above, resulted in Defendant NFTA [*sic*] failing to properly contribute to Plaintiff and other similarly situated employees'

---

("[A] collective bargaining agreement negotiated under the provisions of the Taylor Law may include provisions that are inconsistent with section 971 of McKinney's Unconsolidated Laws, regulating the hours of work and tours of duties of village police officers").

[64]    *See* CBA, Art. III, § 3.1; Lombardo Decl. ¶ 5.  *See also* CBA Article XXVII, "Maintenance of Benefits", which provides that "[a]ll conditions or provisions beneficial to employees, now in effect which are not specifically provided for in this agreement or which have not been replaced by provision of this agreement, shall remain in effect for the duration of this agreement, unless mutually agreed otherwise between the City and the Union."

pension program through the New York State Policeman's and Fireman's Retirement System."[65] In other words, the Thirteenth Cause of Action is derivative of the other causes of action. The putative plaintiffs seek pensions based on the back pay that is allegedly owed them under the other causes of action. To the extent the other causes of action fail, so too must the Thirteenth Cause of Action.

**D.**      **The Putative Plaintiffs Failed To File A Notice Of Claim As Required Under Municipal Law §§ 50-e And 50-i.**

Dismissal of the state law claims is further necessary because the putative plaintiffs have failed to file a notice of claim required by General Municipal Law §§ 50-e and 50-i. A claim seeking "money damages allegedly caused by the failure of the City to discharge a duty imposed upon it by law . . . sounds in tort, and a notice of claim therefore was required to be served upon the City within 90 days after the claim arose, pursuant to General Municipal Law §

---

[65]      Compl. ¶ 149.

50-e."[66]  Notice of claim requirements apply to claims made in Federal Court just as in state court[67] and to class actions brought against municipalities under New York law.[68]

The sole relief sought here is money damages based on the City's alleged failure to comply with Unconsolidated Law § 1015 and the Retirement and Social Security Law.  The plaintiff does not allege that he served a notice of claim.  The state law claims therefore sound in tort and dismissal is necessary for failure to serve a notice of claim.[69]

### E.    The State Law Claims Are Not Properly Brought As A Collective Action.

The state law claims are not properly brought as part of a collective action.  The FLSA authorizes an employee to bring a collection action "for and on behalf of himself . . . and

---

[66]    *Kalis v. City of Buffalo*, 306 A.D.2d 932, 934, 762 N.Y.S.2d 195, 196 (4th Dep't 2003) (reversing trial court and dismissing action seeking payment of wage differential in compliance with City Code where plaintiff failed to file notice of claim); *see also Meila v. City of Buffalo*, 306 A.D.2d 935, 762 N.Y.S.2d 197 (4th Dep't 2003) (same result); *Mutuel Ticket Agents, Local 23293 v. Roosevelt Raceway Assocs.*, 172 A.D.2d 595, 568 N.Y.S.2d 420 (2d Dep't 1991) (notice of claim was required where plaintiff alleged damages based on failure to discharge duties property under General Municipal Law). *Stanford Heights Fire Dist. v. Town of Niskayuna*, 120 A.D.2d 878, 502 N.Y.S.2d 548 (3d Dep't 1986) (notice of claim was prerequisite for filing action alleging damages based on town's improper inclusion of properties within special assessment district); *Phelps Steel, Inc. v. City of Glenn Falls*, 89 A.D.2d 652, 453 N.Y.S.2d 118 (3d Dep't 1982) (notice of claim was necessary where plaintiff claimed money damages against city allegedly caused by city's failure to discharge a duty imposed upon it by law).

[67]    *See, e.g., Watkins v. City of Buffalo*, 1999 U.S. Dist LEXIS 18241, *5-7 (W.D.N.Y. Nov. 12, 1999) (dismissing supplemental state law claims due to failure to file notice of claim).

[68]    *See, e.g., Noerger v. Bd of Educ. of the Great Neck Union Free Sch. Dist.*, 98 A.D.2d 274, 281, 471 N.Y.S.2d 139 (2d Dep't 1983*); Jones v. Bd. of Educ. of the Watertown City School Dist.*, 800 N.Y.S.2d 248 (Sup. Ct. Jefferson Co. 2005).

[69]    *See Kalis*, 306 A.D.2d 932; *Meila*, 306 A.D.2d 935; *Mutuel Ticket Agents, Local 23293*, 172 A.D.2d 595; *Stanford Heights Fire Dist.,* 120 A.D.2d 878; *Phelps Steel*, 89 A.D.2d 652.

other employees similarly situated."[70]  But the FLSA does not authorize the inclusion of state law claims as part of an FLSA collective action.[71]

As the named plaintiff, Foley brings "this action as a collective action on behalf of himself and on behalf of all other employees of Defendant similarly situated."[72]  The plaintiff does not allege that he is bringing the state law claims separately as a class action or through some other vehicle.  Accordingly, his state law claims should be dismissed.

Additionally, even if the plaintiff were attempting to bring a class action, the claims would still be improper because, *inter alia*, a class action to recover damages under a New York statute is not generally authorized under CPLR § 901(b),[73] and the plaintiff has failed to move for class certification within 120 days of filing suit as required under Local Rule 23(d).[74]  Accordingly, the state law claims fail.

---

[70]    29 U.S.C. § 216(b).

[71]    *See Legrand v. Educ. Mgmt. Corp.*, 2004 U.S. Dist. LEXIS 17696, at *5-7 (S.D.N.Y. Sept. 1, 2004) (granting the plaintiffs leave to send collective action opt-in notices "with respect to their FLSA claims, but not with respect to their state-law claims"); *Foster v. Food Emporium*, 2000 U.S. Dist. LEXIS 6053, at *7 (S.D.N.Y. Apr. 26, 2000) ("It is well settled that there is no collective action analogous to FLSA § 261(b) under the wage and overtime provisions of the New York State Labor Law").

[72]    Compl. ¶ 3.

[73]    *See, e.g., Foster*, 2000 U.S. Dist. LEXIS 6053, at *7-8; *Dornberger v. Metro. Life Ins. Co.*, 182 F.R.D. 72, 84 (S.D.N.Y. 1998) (refusing to certify class action based on New York statutory claim where statute did not expressly provide for recovery through class action).

[74]    *See Javier H. v. Garcia-Botello*, 2007 U.S. Dist. LEXIS 10029, at *4-5 (W.D.N.Y. Feb. 13, 2007).

**F.      There Is No Independent Basis For Jurisdiction Over The State Law Claims.**

Lastly, there is no independent basis of jurisdiction over the state law claims and their dismissal is necessary if the Court dismisses the FLSA claims.[75]

## CONCLUSION

For the foregoing reasons, the Court should grant the City's Motion to Dismiss and dismiss the Complaint in its entirety.

Dated: August 2, 2007

**HODGSON RUSS** LLP
*Attorneys for The City of Buffalo*

By:    s/ Joshua Feinstein                              
          Adam W. Perry,
          Jeffrey F. Swiatek, and
          Joshua Feinstein of Counsel
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone:  (716) 856-4000
*josh_feinstein@hodgsonruss.com*

---

[75]    *See, e.g., Salamon v. Our Lady of Victory Hosp.*, 2006 U.S. Dist. LEXIS 14034, at *40-41 (W.D.N.Y. Mar. 8, 2006) (J. Elfvin) (declining to exercise supplemental jurisdiction over state law claims after dismissing federal claims); *see also Gotay-Figueroa*, 1997 U.S. App. LEXIS 28639, at *1 n.1 (dismissing FLSA claims and declining to exercise supplemental jurisdiction over the state law claims even though "apparently local law is more generous than federal law").

- 25 -

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH FOLEY, individually
and on behalf of a class of others similarly
situated,

                                                    Case No.  06-CV-0049 ELF

                                    Plaintiff,

        v.

CITY OF BUFFALO,

                                    Defendant.
_____

## <u>CERTIFICATE OF SERVICE</u>

        I, Joshua Feinstein, hereby declare and certify that on August 2, 2007 I caused to

be served a true and correct copy of The City of Buffalo's Notice of Motion to Dismiss, Brief in

Support of Dismissing the Complaint, dated August 2, 2007; Declaration of Michael Lombardo

in Support of the City of Buffalo's Motion to Dismiss, with Exhibits, dated July 31, 2007, and

Declaration of Joshua Feinstein, with Exhibits, dated August 2, 2007, via filing with the

CM/ECF system, which sent notification of such filing to the following:

Aaron E. Kaplan, Esq.
Sammarco, Mattacola & Sammarco, LLP
The Delaware Court Building
250 Delaware Avenue, Suite 4
Buffalo, NY 14202
and

Tracy D. Sammarco, Esq.
Sammarco, Mattacola & Sammarco, LLP
250 Delaware Avenue
Buffalo, NY 14202

                                     _s/ Joshua Feinstein_____
                                        Joshua Feinstein

- 1 -